UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x

In re

Woodbury Development LLC

Debtor.

-------------------------------------------------------x

Chapter 11

Case no. 12-40652

**NOTICE OF SETTLEMENT**

PLEASE TAKE NOTICE, that pursuant to the annexed application, on July 3, 2012, the above-captioned Debtor will present the attached order to the Honorable Jerome E. Feller, authorizing the Debtor to retain Prudential Douglas Elliman, to represent the Debtor as its real estate broker under section 327(e) of the Bankruptcy Code.

PLEASE TAKE FURTHER NOTICE, that objections, if any, must be in writing, served upon the undersigned proposed Debtor's counsel, and filed with the Clerk of the Bankruptcy Court, with a courtesy copy to the Honorable Feller's chambers, at 271 Cadman Plaza East, Brooklyn, New York 11201, so as to be received on or before July 2, 2012.

Dated: New York, New York
June 12, 2012

BACKENROTH FRANKEL & KRINSKY, LLP

By: s/ Mark Frankel
489 Fifth Avenue
New York, New York 10017
(212) 593-1100

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------x

In re

Woodbury Development LLC

Debtor.

-------------------------------------------------------x

Chapter 11

Case no. 12-40652

**APPLICATION TO RETAIN PRUDENTIAL DOUGLAS ELLIMAN**

Woodbury Development LLC, the debtor and debtor-in-possession herein (the "Debtor"), as and for its application to retain Prudential Douglas Elliman ("Broker") as its real estate broker for the purpose of marketing the Debtor's real property in Harriman, New York (the "Property") pursuant to sections 327(a) and 328(a) of the Bankruptcy Code, Bankruptcy Rule 2014 and Local Bankruptcy Rule 2014-1, respectfully represents as follows:

1. On January 31, 2012 ("Filing Date"), the Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code. The Debtor has continued its business as a debtor-in-possession. No trustee or creditors committee has been appointed.

2. The Property is a 130 acre vacant development parcel adjacent to the Woodbury Commons Shopping Center. The Debtor filed this case on the eve of a foreclosure sale with the intention of selling or refinancing the Property in an orderly way in order to pay all creditors in full in cash with interest and to possibly provide a return to the Debtor' owners.

3. In that regard, the Debtor and the mortgagee are now in agreement as to the need to sell the Property and have entered into a settlement agreement approved by the Bankruptcy Court in connection therewith.

4. The Debtor, therefore, seeks to retain the Broker pursuant to the listing agreement, (the "Listing Agreement," a copy of which is annexed hereto). Under the Listing Agreement, the Broker will maintain an exclusive listing for the Property for nine months, and will be entitled to a 7% commission on a sale of the Property.

5. The Debtor has selected the Broker for the reason that the Broker experience marketing properties of this type in this area.

6. To the best of the Debtor's knowledge, the Broker and its respective employees have no connection with, and no interests adverse to, the Debtor, its creditors, other parties in interest, or their respective attorneys or accountant, and are "disinterested persons" as that term is defined in section 101(14) and 1107(b) of the Bankruptcy Code.

7. No prior application has been made for the relief requested herein.

WHEREFORE, the Debtor respectfully requests that this Court enter the prefixed order and grant such other and further relief as it deems just and proper.

Dated: New York, New York
June 7, 2012

By: s/Deborah Harfanes, as President,

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------x

In re

Woodbury Development LLC

Debtor.

-------------------------------------------------------x

Chapter 11

Case no. 12-40652

**AFFIDAVIT**

STATE OF NEW YORK )
)ss.:
COUNTY OF NEW YORK )

Irene Nickolai, being duly sworn, deposes and says:

1. I am an Executive Vice President of Prudential Douglas Elliman ("Broker"), I am fully familiar with the facts hereinafter stated, and make this affidavit in support of the application to retain the Broker as real estate broker to the above-captioned debtor (the "Debtor"), herein.

2. Insofar as I have been able to ascertain, the officers, directors and employees of Broker are disinterested parties within the meaning of § 101(14) of the Bankruptcy Code and have no interest adverse to the Debtor's estate, its respective creditors, the Office of the United States Trustee, or any other party in interest herein, or their respective attorneys and accountants.

3. The Broker has agreed to be the exclusive broker for the Debtor's real property for a 7% commission, as set forth in more detail in the Listing Agreement attached to the Application for this firm's retention.

s/Irene Nickolai

Sworn to before me this
12 day of June, 2012

s/Joelle Larroche________
Notary Public State of New York
No. 01A6250358
Qualified in New York County
Commission Expires October 24, 2015

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
In re

Woodbury Development LLC

Debtor.
-------------------------------------------------------x

Chapter 11

Case no. 12-40652

**ORDER AUTHORIZING RETENTION OF DEBTOR'S COUNSEL**

Upon the application ("Application") of the above-captioned debtor ("Debtor"), requesting authorization to retain Prudential Douglas Elliman ("Broker"), to represent the Debtor herein as real estate broker, and upon the Affidavit of Disinterest by Irene Nickolai, and it appearing that the Broker represents no interest adverse to the Debtor or its creditors herein, and that its employment is necessary and in the best interests of the estate, and after due deliberation and sufficient cause appearing therefor, it is

ORDERED, that the Debtor be, and it hereby is, authorized pursuant to section 327(a) and 327(e) of the Bankruptcy Code to employ the Broker under the terms set forth in the Listing Agreement attached to the application; and it is further

ORDERED, that the amount of compensation paid by the Debtor shall be determined upon appropriate application to the Court pursuant to Sections 330 and 331 of the

Bankruptcy Code, any applicable Standing Orders of the United States Bankruptcy Courts and the Guidelines of the Office of the United States Trustee; and it is further

ORDERED, that notwithstanding anything to the contrary in the Application or the Listing Agreement (as defined in the Application) the determination of the amount of fees to be paid by the Debtor to the Broker shall be subject to a separate application and order of the Bankruptcy Court; and it is further

ORDERED, that the Broker shall not be entitled to any payments for its services until such time as a sale of the subject property is approved by the Bankruptcy Court, such sale closes, and the Broker files a fee application which is approved by the Court; and it is further

ORDERED, that the Court shall retain jurisdiction with respect to all matters relating to the interpretation or implementation of this Order.

Dated: New York, New York
June _____ , 2012

_______________________________
UNITED STATES BANKRUPTCY JUDGE

NO OBJECTION

s/ _______________________
Office of the United States Trustee

NICKOLAI GROUP | Prudential Douglas Elliman | Nickolai Group Prudential Douglas Elliman 1995 Broadway, New York, NY 10023

## Exclusive Listing Agreement

*Broker acknowledges that Owner is a Chapter 11 Debtor in the United States Bankruptcy Court for the Eastern District of New York ("Bankruptcy Court"), Case no. 12-0652, and not withstanding anything to the contrary in this Agreement, all of the terms of this Agreement are subject to Bankruptcy Court approval. Furthermore, the terms of the sale of the Property Rights, as well as the approval of the sale of the Property and any commissions to be paid are all subject to further order of the Bankruptcy Court.*

This Exclusive Listing Agreement (the "Agreement") is made as of **May 10, 2012** between **Woodbury Development, LLC, represented by** Deborah Harfenes, ("Owner") and **Prudential Douglas Elliman** ("Broker"). Owner hereby grants to Broker the exclusive right to solicit offers from parties interested in purchasing its interest in the real property described below (the "Property"). This exclusive right to solicit will extend for a period (the "Listing Period") commencing as of the date hereof as noted above and ending at midnight on the date that is nine (9) months from the approval by the Owner of the marketing plan described in Section 2(a), below, unless this Agreement is sooner terminated in accordance with the terms hereof. Notwithstanding anything to the contrary contained herein, Owner may elect, in Owner's sole and absolute discretion, to withdraw the Property from the market at any time upon written notice to Broker. Upon such withdrawal, the Listing Period shall automatically end. The Property is located in the Village of Harriman, County of Orange, State of New York, and is more particularly described in Exhibit A.

1. All purchase offers obtained by Broker will be presented by Owner and will be subject to the approval and acceptance by Owner. The terms and conditions of any purchase offer and the proposed purchaser thereunder must be acceptable to Owner in Owner's sole and absolute discretion. Owner reserves the right to accept or reject any offer for any reason or for no reason whatsoever. Broker will not have the authority to accept any offer or proposal or to enter into any commitment on behalf of Owner.

2. Broker's services pursuance to this Agreement will include the following:

   (a) No later than thirty (30) business days after the date hereof, preparing for Owner's approval, in Owner's sole discretion descriptive offering materials and a detailed marketing plan for the Property at Broker's expense. Marketing of the Property shall at all times be conducted by Broker pursuant to a marketing plan approved by Owner. If Owner elects to withdraw the Property from the market during the Listing Period, such Owner shall reimburse Broker for its out-of-pocket marketing expenses up to a maximum amount Five-Thousand Dollars ($5,000).

   (b) Providing advice and assistance in structuring the offering price and terms as required by Owner.

   (c) Screening inquiries from prospective purchasers and/or other brokers.

   (d) Showing the Property to prospective purchasers.

   (e) Negotiating, in coordination with Owner representatives and to the extent required by Owner, the terms and conditions of the sale of the Property.

   (f) Assisting Owner and its counsel in coordinating efforts to achieve timely and efficient documentation and closing of the transaction.




(g) To the extent required by Owner, assisting Owner in providing due diligence materials to prospective purchasers and providing assistance in addressing due diligence issue raised by prospective purchasers.

(h) Distribute marketing materials to prospective purchasers and other Co-Brokerage Companies at a 50/50 split.

3. In consideration of this authorization and Broker's agreement to diligently pursue the procurement of a purchaser for the Property and subject to the provision of this Agreement, Owner agrees to pay Broker a commission equal to 7% of the final purchase price of the Property obtained by Owner at close. Such fee shall be earned and payable only in the event that during the Listing Period the Property is conveyed to a purchaser, or in the event that during the Listing Period Owner enters into a contract to sell the Property to a purchaser and the Property is subsequently conveyed to such purchaser pursuant to said contract, as extended by Owner and such purchaser. No fee or other compensation will be payable to Broker if the sale of the Property pursuant to a contract entered into by Owner and a purchaser during the Listing Period fails to close for any reason whatsoever or for no reason whatsoever Owner's sole and absolute discretion.

4. Subject to the provision of Paragraph 9 below, Owners agrees that during the Listing Period it will refer all further inquiries of any such parties concern the Property to Broker so that all further negotiations between Owner and such parties will be conducted pursuant to this Agreement.

5. Owner shall also pay said commission to Broker if within three (3) months after the expiration of the Listing Period Owner enters into a contract for the sale of the Property, and such sale pursuant thereto is ultimately consummated within six (6) months after the expiration of the Listing Period, with any person or entity, (i) provided that during the term of the Listing Period either (a) such person or entity made a written offer to purchase the Property, or (b) at the expiration of the Listing Period, with any person or entity, (i) provided during the term of the Listing Period either (a) such person or entity made a written offer to purchase the Property, or (b) at the expiration of the Listing Period such person or entity was actively negotiating with Owner concerning the sale of the Property during the Listing Period, which was countersigned by Owner; and (ii) provided further that the name of such person or entity appears on a list of persons and entities meeting the criteria set forth in clauses (a) and (b) above, which list Broker shall have delivered to Owner at the addresses stated below within seven (7) business days following the expiration of the Listing Period.

6. No signs shall be placed on the Property without the prior written consent of Owner, which consent may be with in Owner's sole and absolute discretion.

7. Any commission payable to Broker under this Agreement shall be paid by Owner only upon the close of escrow.

8. Owner agrees to cooperate with Broker in effecting a sale of the Property and to refer to Broker all inquiries of any person or entity interested in purchasing the Property.




9. After Owner's approval of the offering materials, Broker shall submit to Owner every two (2) weeks a written status report concerning Broker's assessment of each prospect's level of interest, and any other information about the prospect which would be of interest to a sophisticated sell of commercial real estate or which otherwise is reasonably required by Owner.

10. At all times during the term of this Agreement, Broker shall present to Owner any and all offers or letters of intent presented to Broker with respect to the Property and shall promptly inform Owner of any other expression of interest in the Property by potential purchasers within 24 hours. At all times, Broker shall provide descriptive marketing materials to Approved Prospective Purchasers. Broker agrees that in the event that any other person or entity brings a claim for a portion of the commission or any other compensation based on such other person's or entities dealing with Broker, Broker shall indemnify Owner and Owner's Related Parties harmless from, any and all claims, losses, damages, liabilities, costs and expenses, including without limitation.

11. The parties acknowledge that it is illegal for either Owner or Broker to refuse to show or sell the Property to any person because of race, color, religion, regional origin, sex, sexual orientation, marital status, or disability.

12. Irene Nickolai and Martin Holland of the Nickolai Group will be responsible for negotiating all transactions on the Owner's behalf for Douglas Elliman. Joey Zimet will be assisting the Nickolai Group with the execution of the marketing plan and all aspects thereof.

IN WITNESS WHEREOF, the parties hereby execute this Agreement as of the date first listed above.

Owner:

Deborah Harfenes
Principal
Woodbury Development, LLC

Broker:

Irene Nickolai
Executive Vice President
Prudential Douglas Elliman